UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JEFF POFF,
*also known as Al-Siddeeq*,

                        Plaintiff,

v.                                                          Case No. 25-cv-186-pp

JACQUELINE SCHELLINGER, *et al.*,

                        Defendants.

---

**ORDER GRANTING PLAINTIFF'S FIRST MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING AS UNNECESSARY PLAINTIFF'S SECOND MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 8), SCREENING AMENDED COMPLAINT (DKT. NO. 7) UNDER 28 U.S.C. §1915A AND DISMISSING CASE FOR FAILURE TO STATE A CLAIM**

---

      Plaintiff Jeff Poff, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. On February 25, 2025, the court received the plaintiff's amended complaint. Dkt. No. 7. Under Federal Rule of Civil Procedure 15, "[a] party may amend its pleading once as a matter of course" within twenty-one days of service of the complaint or of a responsive pleading. Fed. R. Civ. P. 15(a)(1). Because the court has not screened the original complaint or ordered service on any defendant, the plaintiff has the right to amend his complaint as a matter of course, without the court's permission. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. nos. 2, 8, and screens the amended complaint, dkt. no. 7.

**I. Motions for Leave to Proceed without Prepaying the Filing Fee (Dkt. Nos. 2, 8)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his institution trust account. Id.

On February 11, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $1.60. Dkt. No. 5. The court received that fee on April 11, 2025. The court will grant the plaintiff's first motion for leave to proceed without prepaying the filing fee (Dkt. No. 2) and will deny as unnecessary his second motion for leave to proceed without prepaying the filing fee (Dkt. No. 8). The court will require the plaintiff to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II. Screening the Amended Complaint**

　　A. <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss

a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

  B. The Plaintiff's Allegations

The amended complaint concerns events that allegedly occurred while the plaintiff was incarcerated at the Wisconsin Secure Program Facility (WSPF). Dkt. No. 7 at ¶2. The plaintiff sues Lieutenant Matthew Scullion, Security Director Jacob Cirian, Warden Gary Boughton, Unit Manager Brown,

complaint examiner R. Boyer and attorney Jaqueline D. Schellinger. Id. at ¶¶3–8. The plaintiff sues the defendants in their individual capacities. Id.

The plaintiff alleges that on January 11, 2023, while he was sleeping, he was suddenly awakened by Lieutenant Scullion banging on his window to ask if the plaintiff knew Schellinger. Id. at ¶9. The plaintiff said that he did know her and that Schellinger was "the judge on [his] case." Id. Scullion responded that Schellinger wanted the plaintiff "to know that no matter how many time's [*sic*] [the plaintiff] may call or write, she will never tell the truth." Id. (emphasis omitted). The plaintiff says he asked Scullion why "[Scullion] was talking to the judge on his case," but that Scullion simply laughed and walked away. Id. at ¶10. Later that day, the plaintiff wrote letters to Warden Boughton, Security Director Cirian and Unit Manager Brown to tell them about Scullion's actions and to request a protective order against Scullion. Id. at ¶11. The next day, Cirian responded, denying the plaintiff's request. Id. The plaintiff says that Boughton and Brown did not respond to his letters. Id.

The plaintiff alleges that on January 22, 2023, he submitted an administrative complaint about harassment and targeting by Scullion. Id. at ¶12. He says that in addition to contacting Schellinger, in July 2022 Scullion stole or withheld evidence from the plaintiff when he fabricated an incident report and "attempted to frame [the plaintiff] by placing him in segregation." Id. He says he also noted that Scullion had sexually assaulted him in December 2022. Id. The plaintiff says that he also mentioned in his complaint that he had hired a private investigator, who discovered that Schellinger had "been abusing drugs while persiding [*sic*] over the plaintiff's trial." Id. at ¶13. He says that Schellinger sentenced him in 2002 and then was "forced to enter rehab, and then suddenly retired." Id. He says that Schellinger now is a practicing attorney

in Florida, and that he since has written to her to ask her "to come forward, and tell the truth." Id. (emphasis omitted). The plaintiff says that on February 2, 2023, Boyer rejected his administrative complaint as untimely. Id. at ¶14. The plaintiff appealed the rejection of the complaint to Boughton, but Boughton dismissed the appeal about a week later. Id. at ¶¶15–16.

The plaintiff claims that Scullion and Schellinger have plotted "to annoy, intimidate, discourage, harass, target, and harm the plaintiff in order to prevent him from seeking justice, and his liberty over a crime that had nothing to do with guilt or innocence, and instead pure corruption at the highest level's [*sic*]." Id. at ¶17 (emphasis omitted). He asserts that these defendants violated his rights under the Eighth Amendment. Id. The plaintiff alleges that Boughton, Cirian and Brown failed to investigate his letters to them and intervene to stop Scullion in violation of his rights under the Eighth and Fourteenth Amendments. Id. at ¶19. He claims that Boyer failed to investigate his administrative complaint in violation of his rights. Id. at ¶20.

The plaintiff seeks declaratory judgment that the defendants violated his rights, compensatory and punitive damages, a permanent injunction ordering Scullion to stay 500 feet away from him and an injunction forcing Schellinger to provide a "sworn aff[i]davit as to her drug use (while) [*sic*] on the bench" and to prohibit her from calling "any other prison authorities." Id. at pp. 7, 10 (emphasis omitted).

C. Analysis

The plaintiff's primary claim is that Scullion and Schellinger have worked together to harass and target him. The plaintiff says that Schellinger is a former state court judge but currently is (and at the time of the alleged events was) a private attorney in Florida. That means that at the time of the events the plaintiff

5
Case 2:25-cv-00186-PP    Filed 09/05/25    Page 5 of 13    Document 10

describes, Schellinger was a private party, not a state employee. Under §1983, a plaintiff may file a suit only against government officials or employees or individuals who acted "under color of state law." Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 822 (7th Cir. 2009). The plaintiff says Schellinger plotted with Scullion (a state actor) to violate his rights. A private party may act under color of state law if she "acted together with . . . obtained significant aid from state officials." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). To establish §1983 liability against Scullion and Schellinger based on the alleged conspiracy, the plaintiff must establish that they "reached an understanding to deprive plaintiff of his constitutional rights" and that Schellinger was a "willful participant[] in joint activity with the State or its agents." Logan v. Wilkins, 644 F.3d 577, 583 (7th Cir. 2011) (quoting Williams v. Seniff, 342 F.3d 774, 785 (7th Cir. 2003)). The plaintiff must plead facts showing the existence of a conspiracy and "plausibly suggesting that the conspiracy caused a harm of constitutional magnitude." LaFaive v. Wolff, Case No. 23-2549, 2024 WL 277454, at *2 (7th Cir. Jan. 25, 2024) (citing Campos v. Cook County, 932 F.3d 972, 975 (7th Cir. 2019)).

The plaintiff's allegations do not satisfy these criteria. The plaintiff says that Scullion asked him if he knew Schellinger; when the plaintiff replied that he did and that Schellinger was the judge on the plaintiff's case, Scullion allegedly responded that Schellinger "want[ed the plaintiff] to know that no matter how many times [the plaintiff] may call or write, [Schellinger would] never tell the truth." The plaintiff does not allege that Schellinger told Scullion what it was she would not tell the truth about. He does not specifically explain how Scullion and Schellinger came into contact, but the amended complaint states that in his inmate grievance, the plaintiff had complaint that Scullion "Illegally contacted

the Judge on his case . . . ." Dkt. No. 7 at 3. In the "Inmate Complaint" he attached to the amended complaint, the plaintiff complained that Scullion repeatedly stated that *Scullion* had "made contact" with Schellinger, not that Schellinger had contacted Scullion. Dkt. No. 7-1 at 1. The fact that *Scullion* contacted Schellinger is not sufficient to show either that there was a conspiracy to violate the plaintiff's constitutional rights or that Schellinger knowingly joined that conspiracy. Even if Schellinger had contacted Scullion (instead of the other way around), that would not be enough, standing along, to prove that Schellinger "acted together" with Scullion. And even if it *were* enough to suggest that Schellinger "acted together" with Scullion, the plaintiff has alleged no facts suggesting that Schellinger willfully communicated with Scullion to reach "an understanding to deprive plaintiff of his constitutional rights." Whether Schellinger spoke with Scullion is immaterial if there are no facts suggesting that she did so for the purpose of violating the plaintiff's rights, and the plaintiff has alleged no facts suggesting that was her purpose.

Even if the plaintiff had sufficiently alleged that Scullion and Schellinger communicated for the purpose of devising a plan to harass him, his allegations about the alleged harassment do not constitute a violation of his Eighth Amendment rights. Except in exceptional circumstances, verbal harassment from prison officials, "while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment" that violates the Eighth Amendment. Dobbey v. Ill. Dep't of Corr., 574 F.3d 443, 446 (7th Cir. 2009); see Lisle v. Welborn, 933 F.3d 705, 719 (7th Cir. 2019) (citing Beal v. Foster, 803 F.3d 356, 357–58 (7th Cir. 2015)). To state a claim under the Eighth Amendment, the plaintiff must allege that the harassment physically or psychologically harmed him, threatened to harm him or otherwise constituted

abusive conduct. Compare Beal, 803 F.3d at 357 (lying to an incarcerated person about having brain cancer or about his family being killed in a car crash might violate the Eighth Amendment); Hughes v. Farris, 809 F.3d 330, 334 (7th Cir. 2015) (guards who called detainee by offensive terms that "increas[ed] the likelihood of sexual assaults on him" violated detainee's rights) (internal quotation omitted); with Dobbey, 574 F.3d at 446 (rejecting Black incarcerated person's claim against White prison guard who hung a noose in the prison and gave the plaintiff "evil eyes").

The plaintiff's allegations suggest possible harassment but not cruel and unusual punishment. The plaintiff describes only a single instance of harassment[1] and this incident did not involve physical harm, a threat of harm, psychological abuse or other extreme circumstances. The most that can be said about Scullion's alleged comments is that they may have annoyed or upset the plaintiff, and that is how the plaintiff describes them. A correctional officer who annoys, offends or discourages an incarcerated person does not violate that person's Eighth Amendment rights.

The plaintiff tries to tie Scullion's comments about Schellinger to other instances of alleged harassment or actual harm, including a sexual assault that he alleges occurred in December 2022 and an incident involving an allegedly false conduct report from July 2022. But he has not alleged that Schellinger conspired with Scullion about those previous incidents. And in *this* lawsuit, the plaintiff cannot bring claims about Scullion's past conduct that are

---

[1] The plaintiff states in the amended complaint that in the inmate grievance he filed, he described "How in Dec-2022 defendant Scullion had Also sexually Assaulted the Plaintiff." Dkt. No. 7 at 3. But the amended federal complaint does not allege that Scullion sexually assaulted the plaintiff or state a claim based on sexual assault.

unrelated to the claims he seeks to bring in this case against Schellinger and the other defendants. See Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 683 (7th Cir. 2012); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). If the plaintiff believes that Scullion violated his constitutional rights in other ways, he must bring separate lawsuits about Scullion's other alleged actions, (which he already has done about the alleged December 2022 incident. See Case No. 25-cv-112 (E.D. Wis.)).

The amended complaint does not allege an adequate basis for the court to find that Schellinger communicated with Scullion on or around January 11, 2023, or that, if she did, she did so for the purpose of devising a joint plan to harass or harm the plaintiff. Even if there were adequate facts showing that Schellinger acted with Scullion to harm the plaintiff, Scullion's alleged comments did not violate the plaintiff's Eighth Amendment rights. The plaintiff has not stated a claim against Scullion or Schellinger related to this incident, and the court will not allow him to proceed against either defendant.

The plaintiff also has not stated a claim against Boughton, Cirian or Brown. He alleges that he wrote to these defendants about Scullion's alleged comments, and that only Cirian responded, dismissing his concerns. But the plaintiff has not alleged that these defendants were personally involved in the alleged harassment. They cannot be held liable for their "inaction following receipt of a complaint about someone else's conduct." Estate of Miller by Chassie v. Marberry, 847 F.3d 425, 428–29 (7th Cir. 2017) (warden who "brushed off [incarcerated person's] complaints, leaving them to be handled through the chain of command" not liable under §1983). Even if these defendants had an obligation to step in and correct unlawful behavior, the court has explained above that Scullion's comments did not violate the plaintiff's rights. That means

9

there was no conduct that Boughton, Cirian or Brown can be held liable for failing to intervene and stop. See Harper v. Albert, 400 F.3d 1052, 1064 (7th Cir. 2005) ("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation").

The plaintiff also may not proceed against Boyer. The plaintiff says that Boyer failed to investigate his claims and wrongly dismissed his administrative complaint. But incarcerated persons have no federal right to meaningful review of grievances, including an investigation into their allegations. See Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996); Steinke v. Dittmann, No. 17-cv-656, 2020 WL 470145, at *3 (E.D. Wis. Jan. 29, 2020). The plaintiff cannot proceed on a claim against Boyer for how Boyer allegedly handled or mishandled the plaintiff's grievance (or against Boughton for dismissing his appeal). See Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011).

In addition to damages, the plaintiff seeks declaratory and injunctive relief. But the plaintiff is not entitled to declaratory or injunctive relief because he has not alleged a continuing violation of his rights. See Kress v. CCA of Tenn., LLC, 694 F.3d 890, 894 (7th Cir. 2012) (citing Green v. Mansour, 474 U.S. 64, 73 (1985)) ("[U]nder § 1983, declaratory or injunctive relief is only proper if there is a continuing violation of federal law."). The plaintiff is no longer at WSPF, has not alleged that Scullion continues to harass him and has not alleged that he expects to return to WSPF. That means that his request for an injunction against Scullion is moot. See Maddox v. Love, 655 F.3d 709, 716 (7th Cir. 2011). Nor has the plaintiff stated a basis for injunctive relief against Schellinger because he has not alleged "a risk of future harm . . . [that] is 'sufficiently imminent and substantial.'" LaFaive, 2024 WL 277454, at *2 (quoting TransUnion LLC v. Ramirez, 594 U.S. 413, 435 (2021)). The court infers that the

plaintiff believes that Schellinger is thwarting his efforts to overturn his conviction. But the plaintiff may not seek relief under §1983 that could undermine his conviction or sentence unless and until his conviction or sentence has been invalidated or overturned. See Wilkinson v. Dotson, 544 U.S. 74, 81–82 (2005); Heck v. Humphrey, 512 U.S. 477, 486 (1994).

The court finds that the amended complaint does not state a claim. Although district courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so "when 'it is *certain*' that amendment would be futile." See Fields v. Miller, Case No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing Runnion *ex rel.* Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519–20 (7th Cir. 2015)). The plaintiff's amended complaint is thorough in its allegations of facts surrounding his claims. The court finds it certain that further amendment would be futile and will not allow the plaintiff to amend his complaint a second time.

### III. Conclusion

The court **GRANTS** the plaintiff's first motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES AS UNNECESSARY** the plaintiff's second motion for leave to proceed without prepaying the filing fee. Dkt. No. 8.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the amended complaint fails to state a claim. Dkt. No. 7. The clerk will enter judgment accordingly.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$348.40** balance of the filing fee

by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution, where the plaintiff is confined..

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **thirty days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion in *this court.* See Fed. R. App. P. 24(a)(1). The Court of Appeals may assess the plaintiff another "strike" if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **twenty-eight days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 5th day of September, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**